# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

YVETTE ADAMS, *et al.*,                    )
                                            )
                    Plaintiffs,            )        Case No.: 2:18-cv-02305-GMN-BNW
          vs.                               )
                                            )        **ORDER**
TEVA PARENTERAL MEDICINES, INC., *et* )
*al.*,                                       )
                                            )
                    Defendants.            )
_____)

      Pending before the Court is the Motion to Remand, (ECF No. 9),[1] filed by Plaintiffs

Yvette Adams, Margaret Adymy, Thelma Anderson, John Andrews, Maria Artiga, Lupita

Avila-Medel, Henry Ayoub, Joyce Bakkedahl, Donald Becker, James Bedino, Edward

Benavente, Margarita Benavente, Susan Biegler, Kenneth Burt, Margaret Calavan, Marcelina

Castaneda, Vickie Cole-Campbell, Sherrill Coleman, Nancy Cook, and James Duarte

(collectively "Plaintiffs").  Defendants Teva Parenteral Medicines, Inc., Sicor, Inc., Baxter

Healthcare Corporation, and McKesson Medical Surgical, Inc. (collectively "Defendants") filed

a Response, (ECF No. 14), and Plaintiffs filed a Reply, (ECF No. 15).

      For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion to Remand.

## I.    BACKGROUND

      Plaintiffs are adult individuals who underwent treatment at a medical center in Las

Vegas, Nevada (the "Clinic") between 2004 and 2008 for endoscopy procedures. (*See* Compl.

¶¶ 7–8, Ex. A to Pet. for Removal, ECF No. 1-1).  Under the care of the Clinic's health care

---

[1] Prior to Plaintiffs filing the instant Motion, Defendants filed a Motion to Dismiss, (ECF No. 4).  Subsequently, the Court granted the parties' stipulation to stay the briefing schedule on the Motion to Dismiss until the instant Motion to Remand is resolved, (ECF Nos. 8, 13).  Because the Court remands this action in this Order, the Motion to Dismiss is **DENIED as moot**.

providers, Plaintiffs were injected with propofol, an anesthetic drug manufactured, marketed, distributed, and sold by Defendants to the Clinic. (*Id.* ¶¶ 2–4, 7, 12).

On February 28, 2008, the Southern Nevada Health District sent a letter to 60,000 former Clinic patients, including Plaintiffs, stating they were at risk of exposure to bloodborne pathogens. (*Id.* ¶ 15). The letter recommended that all persons who received an injection at the [Clinic] between March of 2004 and January of 2008," as well as their spouses, be tested for Hepatitis B, Hepatitis C, and HIV. (*Id.* ¶ 11). Plaintiffs obtained the recommended testing and ultimately learned they were infection-free. (*Id.* ¶ 13). In doing so, Plaintiffs incurred medical bills and other out-of-pocket expenses, and endured emotional distress, anxiety, and fear during the pendency of their respective test results. (*Id.* ¶ 17). According to the Complaint, at all relevant times to this action, Defendants knew or should have known that the Clinic's practices "involved the re-use of injection syringes and anesthesia bottles," creating a "foreseeable risk of infection/cross-contamination between patients with whom said syringes and anesthesia bottles were shared." (*Id.* ¶ 9).

Plaintiffs filed this action in state court on July 26, 2018, bringing the following causes of action against Defendants: (1) strict product liability; (2) breach of the implied warranty of fitness for a particular purpose; (3) negligence; (4) violation of the Nevada Deceptive Trade Practices Act; and (5) punitive damages. (*Id.* ¶¶ 19–60). On December 10, 2018, Defendants removed the case here on the grounds of diversity and federal-question jurisdiction. (*See* Pet. for Removal, ECF No. 1). Shortly thereafter, Plaintiffs filed the instant Motion requesting that the Court remand this action back to state court. (*See* Mot. to Remand, ECF No. 9).

## II.  <u>LEGAL STANDARD</u>

Federal courts are courts of limited jurisdiction, possessing only those powers granted by the Constitution and by statute. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008) (citation omitted). For this reason, "[i]f at any time before final judgment it appears that the

district court lacks subject-matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). District courts have subject-matter jurisdiction in two instances. First, district courts have subject-matter jurisdiction over civil actions that arise under federal law. 28 U.S.C. § 1331. Second, district courts have subject-matter jurisdiction over civil actions where no plaintiff is a citizen of the same state as a defendant and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

A defendant may remove an action to federal court only if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). "Removal statutes are to be 'strictly construed' against removal jurisdiction." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012) (quoting *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002)). "The 'strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper,' and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992) (per curiam)).

## III.  DISCUSSION

Plaintiffs move to remand this action on the basis that the Court is without subject-matter jurisdiction. (*See generally* Mot. to Remand, ECF No. 9). Defendants oppose Plaintiffs' Motion, contending this Court enjoys both diversity jurisdiction, as well as federal-question jurisdiction. (Defs.' Resp. to Mot. to Remand ("Resp.") 4:6–9:13, ECF No. 14).

The Court begins with diversity jurisdiction, followed by federal-question jurisdiction.

### A. Diversity Jurisdiction

Federal courts have diversity jurisdiction over all civil actions in which the amount in controversy: (1) exceeds the sum or value of $75,000; and (2) is between citizens of different states. 28 U.S.C. § 1332(a). In the present case, it is undisputed that complete diversity of citizenship exists because no Plaintiff is a citizen of the same state as any Defendant. (*See* Pet.

for Removal ¶¶ 8–11, ECF No. 1); (Compl. ¶¶ 1–4, ECF No. 1-1). Therefore, the question is whether the amount in controversy exceeds $75,000.

### 1. Amount in Controversy

In determining the amount in controversy, the Court's "starting point is whether it is facially apparent from the complaint that the jurisdictional amount is in controversy." *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994, 998 (9th Cir. 2007). "[W]hen a complaint filed in state court alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold, such requirement is presumptively satisfied unless it appears to a 'legal certainty' that the plaintiff cannot actually recover that amount." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (quoting *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996)). "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003) (per curiam).

Here, the amount in controversy is not facially evident from the Complaint. Plaintiffs' prayer for relief includes a request for general damages "in excess of $15,000," and unspecified sums for punitive damages, attorneys' fees, and costs. (*See* Compl. 13:7–13). Though Plaintiffs request special damages "in excess of $15,000," within four of the Complaint's substantive claims, those requests employ identical language and expressly seek the same damages arising from the same injury. (*See id.* ¶ 41) ("Plaintiffs have incurred special damages in the form of medical expense as well as emotional distress, anxiety, and fear during the pendency of their test results and for some time after . . . ."); (*see also id.* ¶¶ 48, 53, 56) (same). Given the overlapping requested relief, the value of special damages on the face of the Complaint is uncertain. *See Singh v. Glenmark Phargenerics, Inc.*, No. 2:14-cv-154-GMN-CWH, 2014 WL 4231364, at *2 (D. Nev. Aug. 26, 2014) ("[T]hese causes of action seek recovery for the same

injuries. Therefore, it would be fallacious to mechanically add these values in determining the total amount in controversy, as Plaintiffs cannot recover multiple times for the same harm.") (citing *Elyousef v. O'Reilly & Ferrario, LLC*, 443, 245 P.3d 547, 549 (Nev. 2010) ("[A] plaintiff may not recover damages twice for the same injury simply because he or she has two legal theories.")).

Aside for the $15,000 Plaintiffs seek in general damages and the $15,000 requested in special damages, the remaining categories of relief do not assign dollar amounts. Thus, because the jurisdictional amount is not facially evident, Defendants must show, by a preponderance of the evidence, that it is more likely than not that $75,000 is at stake. *Matheson*, 319 F.3d at 1090–91. On this point, Defendants point to Plaintiffs' prayer for punitive damages and attorneys' fees to satisfy the jurisdictional threshold.

### a. Punitive Damages

Where punitive damages are recoverable under state law, such damages may be considered in determining the amount in controversy. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). Because Nevada permits recovery of punitive damages, NRS 42.005, Plaintiffs' prayer for the same may be considered in calculating the amount in controversy. In situations where the value of punitive damages is unclear, "[t]he defendant bears the burden of actually proving the facts to support jurisdiction." *Gaus*, 980 F.2d at 567. To establish the probable amount of punitive damages, a defendant must come forward with evidence, which may include jury verdicts or settlements in substantially similar cases. *See, e.g.*, *Flores v. Standard Ins. Co.*, No. 3:09-cv-00501-LRH-RAM, 2010 WL 185949, at *5 (D. Nev. Jan. 15, 2010); *Campbell v. Hartford Life Ins. Co.*, 825 F. Supp. 2d 1005, 1008 (E.D. Cal. 2011).

Here, Defendants' argument with respect to punitive damages is too speculative to be credited. Defendants contend that the Complaint's reference to NRS 42.005, which permits an award of up to $300,000 when a plaintiff's compensatory damages do not exceed $100,000,

establishes that more than $75,000 is in on controversy. (Resp. 6:9–17). Defendants, however, neglect to support its argument with facts from this case or any analogous case to demonstrate the likelihood of a punitive damages award. "Mere allusion, in the absence of supplementary evidence, is insufficient for the Court to determine a probable punitive damages amount." *Cayer v. Vons Cos.*, No. 2:16-cv-02387-GMN-NJK, 2017 WL 3115294, at *3 (D. Nev. July 21, 2017); *see also Hannon v. State Farm Mut. Auto. Ins. Co.*, No. 2:14-cv-1623-GMN-NJK, 2014 WL 7146659, at *3 (D. Nev. Dec. 12, 2014) (excluding punitive damages in the amount in controversy given the defendant's "fail[ure] to identify any particular facts or allegations which might warrant a large punitive damage award."). Because Defendants have not met their burden, the Court will not include punitive damages in determining the amount in controversy.

### b. Attorneys' Fees

"[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Guglielmino*, 506 F.3d at 700 (quoting *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998)). "This Court considers attorneys' fees to be within the amount in controversy if the removing party: (1) identifies 'an applicable statute which could authorize an award of attorneys' fees and (2) provide[s] an estimate as to the time the case will require and opposing counsel's hourly billing rate.'" *Cayer*, 2017 WL 3115294, at *2 (quoting *Hannon*, 2014 WL 7146659, at *2).

Here, Defendants neither identify a statute nor provide an estimate of Plaintiffs' counsel's billing rate. Instead, Defendants limit their argument to hypothesizing that because the parties have been in settlement negotiations going back to April 2016, Plaintiffs' attorneys' fees "as a practical matter" have likely surged. (Resp. 6:5–8). Such speculation is not enough to warrant inclusion of attorneys' fees in the amount in controversy. *See, e.g.*, *Surber v. Reliance Nat. Indent. Co.*, 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000) (declining to add

attorneys' fees to the amount-in-controversy calculation where "Defendant has not estimated the amount of time that the case will require, nor has it revealed plaintiff's counsel's hourly billing rate."); *see also Wilson v. Union Sec. Life Ins. Co.*, 250 F. Supp. 2d 1260, 1264 (D. Idaho 2003) (stating a defendant "must do more than merely point to [a plaintiff's] request for attorney's fees; upon removal it must demonstrate the probable amount of attorney's fees").

To summarize, Defendants have not met their burden of showing, by a preponderance of the evidence, that more than $75,000 is at stake in this case. Accordingly, the Court cannot exercise diversity jurisdiction over this matter.

## B. Federal-Question Jurisdiction

28 U.S.C. § 1331 vests federal district courts with original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." "To remove a case as one falling within federal-question jurisdiction, the federal question ordinarily must appear on the face of a properly pleaded complaint; an anticipated or actual federal defense generally does not qualify a case for removal." *Jefferson Cty. v. Acker*, 527 U.S. 423, 430–31 (1999); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.").

Defendants do not contest that the Complaint, on its face, is solely comprised of state-law claims. Rather, Defendants appear to advance two distinct theories to support federal-question jurisdiction: (1) Plaintiffs' claims are preempted because they rely on state-law duties that conflict with those imposed by federal law; and (2) the Complaint necessarily raises a substantial federal question because resolution of the claims requires examination of federal issues that fall within the exclusive authority of the U.S. Food and Drug Administration ("FDA"). (Resp. 6:19–9:13). The Court addresses each argument in turn.

### 1. Federal Preemption

According to Defendants, the Complaint necessarily raises a federal issue because the Supremacy Clause preempts Plaintiffs' state law claims. (*Id.* 7:18–23). Defendants explain that the wrongful conduct alleged—Defendants' improper packaging and distribution of propofol—is governed exclusively by the FDA, which has promulgated regulations establishing baseline manufacturing requirements for the preparation of drug products. (*Id.* 4:26–5:18) (citing 21 C.F.R. § 211). And because Plaintiffs' claims rely upon state-law duties that go beyond what the FDA requires, the issue of federal preemption is necessarily raised. (*Id.* 7:15–23, 8:11–9:13).

To the extent Defendants invoke "defensive preemption," the Court is unconvinced. It is well settled that "a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption." *In re NOS Commc'ns*, 1357, 495 F.3d 1052, 1057 (9th Cir. 2007) (emphasis in original) (quoting *Caterpillar*, 482 U.S. at 392). This rule applies "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 392.

Insofar as Defendants advance a "complete preemption" argument, it necessarily fails. The U.S. Supreme Court has recognized that the "preemptive force of some statutes is so strong that they 'completely preempt' an area of state law." *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393 (internal citation and quotation marks omitted). Complete preemption is "rare" and has only been endorsed by the U.S. Supreme Court with respect to three federal statutes: § 301 of the Labor Relations Act; §§ 85 and 86 of the National Bank Act; and § 502 of the Employee Retirement Income Security Act.

*See Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 948 n.5 (9th Cir. 2014).

In the present case, Defendants have not made any showing as to why the Federal Food, Drug, and Cosmetic Act ("FDCA") should be counted as a completely preemptive statutory scheme. In any event, the Court is persuaded by the overwhelming weight of authority holding that Congress's endorsement of *some* state-law claims arising from FDCA regulations conclusively defeats arguments in favor of complete preemption. *See, e.g.*, *Bridges v. Teva Parenteral Medicines, Inc.*, No. 2:18-cv-02310-JCM-VCF, 2019 WL 1585109, at *4 (D. Nev. Apr. 12, 2019) (collecting Ninth Circuit district court cases holding that "the FDCA does not completely preempt state law"); *see also Mihok v. Medtronic, Inc.*, 119 F. Supp. 3d 22, 32 (D. Conn. 2015) ("Congress anticipated and approved of limited state court analysis and application of the FDA regulations when it decided not to completely preempt parallel state law claims.") (citing *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008) (holding that 21 U.S.C. § 360 of the FDCA does not "prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel' rather than add to, federal requirements.")).

Next, the Court turns to Defendants' contention that Plaintiffs' claims necessarily turn on a question of federal law.

### 2. Jurisdiction Under *Gunn-Grable*

The U.S. Supreme Court has identified a "special and small category" of cases that arise under federal-question jurisdiction notwithstanding a complaint's sole reliance on state-law claims. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citation omitted). "Federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* (citing *Grable & Sons Metal Prod., Inc. v. Darue Eng'g &*

*Mfg.*, 545 U.S. 308, 313–14 (2005)). To support federal-question jurisdiction, all four *Gunn-Grable* requirements must be satisfied. *Id.*

Defendants contend that the Complaint requires examination of the FDCA's "duty of sameness," under 21 U.S.C. § 355 and 21 C.F.R. § 314, which requires that generic drug manufactures label their products identically to the respective brand manufacturer's label. (Resp. 5:23–6:1). According to Defendants, this duty "applies to every portion of Plaintiffs' complained-of conduct, including labeling, warnings, route of administration, dosage form, and strength." (*Id.* 6:1–3). Therefore, because the duty of sameness required that Defendants' labeling conform to that of the brand-name product, the Complaint necessarily touches upon Defendants' compliance with federal law. (*Id.* 6:3–17).

The problem for Defendants is that the Complaint does not allege that Defendants violated the FDCA's duty of sameness, or any federal duty for that matter.[2] Tellingly, Defendants do not cite to any portion of the Complaint for this proposition. Even if Plaintiffs raised the FDCA or the duty of sameness as an element of a claim, that would still not end the federal-question inquiry. For one thing, it is axiomatic that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986). Furthermore, it is well established that "[w]hen a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Bank of Am. Corp.*, 672 F.3d at 675 (quoting *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir.

---

[2] On this basis, Defendants' proffered supplemental authority is readily distinguishable. *See Bowdrie v. Sun Pharm. Indus. Ltd.*, 909 F. Supp. 2d 179, 183–84 (E.D.N.Y. 2012) (holding a federal issue was necessarily raised in the FDCA context where the complaint repeatedly and expressly alleged the "ongoing federal duty of sameness," as elements of the state-law claims). Additionally, *Bowdrie* concerned a generic manufacturer's failure to update its labeling to be consistent with the brand-name manufacturer's modified label. *Id.* at 181. In this case, by contrast, no such facts are alleged.

1996)).  Indeed, each of Plaintiffs' claims refer only to common law duties under Nevada law and, consequently, do not appear to require federal analysis for their resolution.  As Defendants have not articulated how any *specific* claim necessitates resort to federal law, Defendants have failed to meet their burden of showing otherwise.  *See Cruz v. Preferred Homecare*, No. 2:14-cv-00173-MMD-CWH, 2014 WL 4699531, at *3 (D. Nev. Sept. 22, 2014) (rejecting the defendants' reliance on FDA regulation to establish the first *Gunn-Grable* element as "wholly insufficient, especially when contrasted with *Grable* and *Gunn*, in which the removing parties demonstrated that plaintiffs' *specific* claims hinged on a court's adjudication of a federal issue.") (emphasis in original).

Thus, Defendants have failed to establish the first element of the *Gunn-Grable* test.  As the party asserting federal jurisdiction, Defendants bear the burden of showing removal is proper. *Gaus*, 980 F.2d 566.  This burden is of enhanced significance in this context, where the weight of authority suggests no federal-question jurisdiction exists. *See, e.g.*, *Merrell Dow*, 478 U.S. at 817 (holding that a complaint's state-law claims against a drug manufacturer, premised upon FDCA misbranding violations, do not support federal-question jurisdiction); *Grable*, 545 U.S. at 316–20 (discussing *Merrell Dow*'s holding and reiterating "if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action."); *Burrell v. Bayer Corp.*, 918 F.3d 372, 381 (4th Cir. 2019) (concluding a plaintiff's state-law claims regarding FDA-regulated medical devices do not satisfy the third and fourth prongs of *Gunn-Grable*, and expressing doubt as to whether such claims necessarily raise federal issues under the first prong); *see also* *Nunes v. Affinitylifestyles.com, Inc.*, No. 2:16-cv-02265-APG-NJK, 2017 WL 359178 (D. Nev. Jan. 23, 2017); *Brandle v. McKesson Corp.*, No. C 12-cv-05970 WHA, 2013 WL 1294630 (N.D. Cal. Mar. 28, 2013).  Because Defendants have not put forth a thorough, meaningful case

for application of the *Gunn-Grable* exception, the strong presumption against removal jurisdiction remains undisturbed.

In short, Defendants have not satisfied the Court that it may exercise diversity jurisdiction or federal-question jurisdiction. Consequently, this action must be remanded back to state court for want of subject-matter jurisdiction. Plaintiffs' Motion to Remand is therefore granted.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand, (ECF No. 9), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss, (ECF No. 4), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that this matter is hereby **REMANDED** to the Eighth Judicial District Court for the State of Nevada, County of Clark.

The Clerk of Court is instructed to close this case.

**DATED** this __26__ day of August, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Judge